UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ADOLPHO RIVERA,                          :        CIVIL ACTION NO. 3:CV-12-1736

      Petitioner                      :        (Judge Nealon)

v.                                       :        **FILED**
                                                  **SCRANTON**
UNITED STATES OF AMERICA,                 :
                                                  MAY - 8 2014
      Respondents                     :        PER _____
                                                        DEPUTY CLERK

## MEMORANDUM

Petitioner, Adolpho Rivera, a federal inmate currently confined in the Allenwood Federal Correctional Institution, White Deer, Pennsylvania (FCI-Allenwood), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  He challenges a warrant issued by the United States Parole Commission ("Commission") and subsequent parole revocation hearing.  (Doc. 1).  The petition is ripe for disposition.  For the reasons set forth below, the petition will be denied.

## I.      Background

In 1975, Rivera was found guilty in the United States District Court for the Southern District of New York of four counts of assaulting a federal officer with a dangerous weapon.  (Doc. 8-1 at 5, Judgment and Commitment Order).

On March 7, 1975, Rivera was sentenced to a 25-year prison term, with ten years suspended, and a one-day probation term.  Id.

On August 29, 1975, the district court modified the sentence to a ten year term of imprisonment. (Doc. 8-1 at 4, Sentence Computation Record).

On October 11, 1978, the United States Parole Commission paroled Rivera to New York State correctional authorities based on a New York State detainer for criminal sale of a controlled substance. (Doc. 8-1 at 6-9 Certificate of Parole, Doc. 1-6 at 14, Notice of Release and Arrival). At the time of his parole, Rivera had 2,198 days remaining to be served on his federal term. (Doc. 8-1 at 6-9 Certificate of Parole). Rivera was paroled from his sentence by the U.S. Parole Commission, and was to remain under parole supervision until October 17, 1984. Id.

In 1979, Rivera was sentenced to one year to life in prison on the state drug charge. (Doc. 1-6 at 15, Request for Parole Violator Warrant). In 1980, his sentence on the state drug charge was reduced to one to three years in prison. Id. Rivera was thereafter released from state custody sometime prior to 1982. Id.

On December 6, 1982, Rivera was arrested for attempting to enter the American Airlines terminal at John F. Kennedy International Airport ("JFK Airport") by pushing past a security officer. (Doc. 8-1 at 8, Warrant Application dated September 11, 1984). Arresting officers found cocaine and marijuana in Rivera's briefcase. Id.

On November 21, 1983, Rivera was convicted of criminal possession of a

controlled substance in Queens County Supreme Court and sentenced to a term of

eight years to life in prison. Id.

On September 21, 1983, before he was sentenced for the crimes he

committed at JFK Airport, Rivera's car was cut off in a traffic accident. Id. See also

(Doc. 1-6 at 15, Request for Parole Violator Warrant).  He then impersonated a

police officer, pulled out a police shield, walked over to the driver who cut him off,

and shot him to death. Id.  Rivera was arrested on September 30, 1983. Id.  On

January 10, 1984, Rivera was convicted of manslaughter in Kings County Supreme

Court and sentenced to six to twelve years in prison. Id.

On September 11, 1984, prior to the expiration of his sentence, the

Commission issued a parole violator warrant, charging Rivera with a violation of the

conditions of his parole based on his two state court convictions in 1983 and 1984

for criminal possession of a controlled substance and manslaughter.  (Doc. 8-1 at 8-

9, Warrant Application and Warrant).

In 1985, the Parole Commission conducted a dispositional record review of

Rivera's warrant and detainer, pursuant to 28 C.F.R. § 2.47.[1]  (Doc. 1-6 at 20, Parole

---

[1]In this type of review, the Commission makes a decision on the basis of the record file whether to (a) let the warrant stand as a detainer and set a schedule for a parole revocation hearing or (b) withdraw the warrant and order the parolee's reinstatement to parole.

Commission Letter dated January 18, 1985). Following that review, the Commission decided to leave the warrant in place as a detainer and to conduct a revocation hearing after December 1997. See (Doc. 1-6 at 24, Order, dated April 17, 1985).

By Notice of Action dated December 21, 1996, following a second dispositional record review, the Commission voided its prior order to conduct a parole revocation hearing after December 1997, and ordered that its detainer stand, meaning that a parole revocation hearing would be scheduled upon Rivera's return to federal custody. (Doc. 8-1 at 13, Notice of Action).

On July 18, 2011, Rivera was released from his state sentence, the Commission's warrant was executed, and Rivera was returned to federal custody. (Doc. 8-1 at 14, Warrant Return). Based on Rivera's state convictions, the Parole Commission found probable cause for the parole violations. See (Doc. 1-6 at 27, Probable Cause Worksheet dated August 9, 2011).

On January 26, 2012, the Commission conducted a prole revocation hearing for Rivera. (Doc. 8-1 at 15, Hearing Summary). Following the hearing, the Commission ordered Rivera's parole revoked and ordered that he receive no credit for street time spent on parole. Id. The Commission ordered that Rivera continue to serve until the expiration of his sentence. (Doc. 8-1 at 19, Notice of Action).

On August 28, 2012, the National Appeals Board affirmed the

Commission's decision on appeal.  (Doc. 8-1 at 22, Notice of Action on Appeal).

The computation of Rivera's sentence by the Bureau of Prisons (BOP) shows his projected satisfaction date as March 6, 2015.  (Doc. 8-1 at 24, Sentence Monitoring Computation Data).

On July 16, 2012, Rivera filed the instant petition for writ of habeas corpus, claiming that the Commission's warrant issued September 11, 1984 is no longer valid because the statute authorizing the issuance of the warrant has been repealed; the time that he had left to serve on his 10-year federal sentence at the time he was paroled in 1978 had expired; and holding a revocation hearing would violate due process because the passage of time has caused him to lose witnesses regarding the alleged parole violations.  (Doc. 1, petition).

II.     **Discussion**

A.     **Validity of Parole Commission Warrant**

Rivera contends that his parole violator warrant is invalid because federal parole was abolished in the Sentencing Reform Act of 1984.

In 1984, Congress passed the Comprehensive Crime Control Act of 1984, which included the Sentencing Reform Act of 1984.  The Sentencing Reform Act provided for the creation of the United States Sentencing Commission to promulgate the federal sentencing guidelines in use today.  The Sentencing Guidelines went into

effect on November 1, 1987. Under the Sentencing Guidelines, defendants were to serve determinate sentences with limited reduction for good time. Supervised release replaced parole, and the conditions of supervised release and revocation were to be determined by the courts rather than the Parole Commission. With these changes, the Parole Commission and the parole release and revocation laws were to be abolished five years after the November 1, 1987 effective date of the Sentencing Guidelines. See generally Peter B. Hoffman, History of the Federal Parole System: Part 2 (1973-1997), Federal Probation, 61-DEC Fed. Probation 49, 53 (December 1997).

In 1990, prior to the planned expiration of the parole laws, Congress extended the life of the Parole Commission and the parole release and revocation laws for another five years so that the Parole Commission could discharge its responsibilities to those sentenced under pre-existing law. See Judicial Improvements Act of 1990, Pub. L. 101-650, Section 316, 104 Stat. 5115 (Dec. 1, 1990). Since then, Congress has repeatedly extended the Parole Commission and its parole release and revocation laws, most recently on October 21, 2011. See United States Parole Commission Extension Act of 2011, Pub. L. 112-44, Section 2, 125 Stat. 532 (Oct. 21, 2011). In the 2011 Act, Congress kept all parole release and revocation laws in effect until October 31, 2013. As such, the Parole Commission's

1984 parole violator warrant remained valid.

## B. Rivera's federal sentence has not expired.

Rivera believes that the time he served on his federal sentence kept running when he was turned over to New York State custody in 1978 and, therefore, the time that he had left to serve on his ten-year federal sentence expired at the time he was paroled in 1978. The Court finds no merit to Petitioner's argument.

Initially, the Court notes that Rivera was on federal parole from his ten-year sentence imposed in 1975 when he was convicted of his state crimes in 1983 and 1984. Thus, contrary to Rivera's argument, all of the time he spent in state custody, from October 11, 1978, the date he was paroled to the state, until his arrest on July 18, 2011 on the parole violator warrant, is subject to forfeiture as a consequence of his 1983 and 1984 convictions.

The Parole Commission is authorized by statute to determine whether the sentence for a parolee convicted of a crime punishable by imprisonment while on parole shall be served consecutively or concurrently with the sentence imposed on the new offense. See 18 U.S.C. § 4210(b)(2). Under the Parole Commission's interpretation of the statute, all time spent on parole is required to be forfeited if the Commission revokes parole on the basis of a new conviction for a crime committed

while on parole and punishable by imprisonment.  <u>See</u> 28 C.F.R. § 2.52(c)(2)[2]; <u>see</u>

<u>also</u> <u>D'Amato v. U.S. Parole Commission</u>, 837 F.2d 72, 78 (2d Cir. 1988) (noting

that the Commission requires the forfeiture of time spent on parole by a parolee

convicted of a crime committed while on parole that is punishable by a term of

imprisonment); <u>Heath v. U.S. Parole Commission</u>, 788 F.2d 85, 91 (2d Cir. 1986)

(concluding that the Commission is authorized to order the forfeiture of all the time

remaining on a parolee's sentence on the date of parole from federal custody).

As a result, the Commission revoked Rivera's parole at his January 26, 2012

hearing based on his 1983 and 1984 state court convictions, which were committed

while he was on parole and were both punishable by imprisonment.  Petitioner was

required to forfeit all of the time spent in state custody between October 11, 1978

and July 18, 2011.  <u>See</u> <u>Weeks v. Quinlan</u>, 838 F.2d 41, 42 (2d Cir. 1988) (affirming

district court decision upholding Parole Commission determination that parolee

convicted of a new offense punishable by imprisonment could not receive credit for

time served in state prison).

---

[2]"It is the Commission's interpretation of 18 U.S.C. 34210(b)(2) that, if a parolee has been convicted of a new offense committed subsequent to his release on parole, which is punishable by any term of imprisonment, detention, or incarceration in any penal facility, forfeiture of time from the date of such release to the date of execution of the [parole revocation] warrant is an **automatic statutory penalty,** and such time shall not be credited to the service of the sentence."  28 C.F.R. § 2.52(c)(2) (emphasis added).

### C.    Rivera's parole revocation hearing did not violate his due process rights.

Rivera argues that a parole revocation would violate his due process rights. He claims that he has lost witnesses as a result of the delay because all of his potential witnesses are deceased or suffering from mental problems. (Doc. 1, petition at 2). He also contends that the outstanding warrant "prevented [him] from re-integrating back to society." Id.

The United States Supreme Court has rejected similar claims that a parolee's due process rights were violated when he had to wait to complete his state sentence before having a parole violation hearing. See Moody v. Daggett, 429 U.S. 78 (1976). In Moody, the Court found that the alleged effects of the delay in having a parole violation hearing, including loss of witnesses and delay re-integrating into society, did not rise to the level of a grievous loss of a liberty interest that must be rectified by an early revocation hearing. Id. at 87-88 & n.9; see also Heath, 788 F.2d at 90-91 (holding that a federal parolee serving independent intervening sentence in state custody has no constitutional right to a prompt revocation hearing).

Moreover, to obtain habeas relief, Rivera must show prejudice from the delay in conducting his revocation hearing. E.g., Heath, 788 F.2d at 90; see also Bennett v. Bogan, 66 F.3d 812, 818-19 (6th Cir. 1995). Rivera's conclusory

assertion in his petition does not allege any facts to support his claims of lost witnesses and lost opportunity to successfully re-integrate into society. Rivera's revocation hearing was delayed by less than four months as the warrant was executed July 18, 2011, and the hearing held January 26, 2012. See 28 C.F.R. § 2.49(f) (providing that an institutional revocation hearing should be conducted within 90 days of execution of the warrant). Rivera does not allege that the delay of less than four months in his hearing was responsible for the loss of witnesses who would have been available between July 18, 2012 and October 18, 2012; rather, he asserts that the hearing is untimely because the underlying events happened many years ago. But Rivera did not have a right to a revocation hearing in 1983 or 1984 when he received his new conviction, and when the Commission's warrant was issued. It is only execution of the warrant that triggers a right to a revocation hearing. Morrissey v. Brewer, 408 U.S. 471, 485 (1972) (finding that arrest as parole violator commences revocation process); Moody, 429 U.S. at 89 (holding that there is no right to revocation hearing when parole violation warrant is lodged as a detainer during service of new sentence). Accordingly, Rivera has failed to meet his burden of proving prejudice from the delay in conducting his revocation hearing.

Finally, Rivera's two state court convictions conclusively establish that he violated the conditions of his parole. As such, he does not have a due process right

to present witnesses relating to the circumstances of those crimes. <u>Morrissey</u>, 408 U.S. at 490) ("Obviously a parolee cannot [at his revocation hearing] relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime."); 28 C.F.R. § 2.49(a) (stating that parolee is entitled to a "local" revocation hearing only if not convicted of crime committed on parole); § 2.50(c)("Adverse witnesses will not be requested to appear at institutional revocation hearings."). Accordingly, the Commission did not violate Rivera's due process rights, as he lacked the right to confrontation and cross-examination of adverse witnesses.

With respect to whether Rivera can "live in society without committing antisocial acts" and should be released again, <u>Moody</u>, 429 U.S. at 89, any witnesses for Rivera would need to address his current state of mind and the likelihood that he will re-offend. It is unclear how any witnesses in a position to address these issues could be deceased or suffering from mental problems. As such, this claim is without merit.

Based on the above, the petition for writ of habeas corpus will be denied. A separate Order will be issued.

Dated:  May 8, 2014

**United States District Judge**